**BROWN KWON & LAM, LLP**
Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ERIC MYCOO,**<br>***on behalf of himself and others similarly situated,***<br><br>**Plaintiff,**<br><br>**- against -**<br><br>**ANGLER ELECTRIC LLC, and**<br>**GREGORY BLAU,**<br><br>**Defendants.** | **Case No: 1:26-cv-6783**<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT** |

Plaintiff ERIC MYCOO ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge as to himself, and upon information and belief as to other matters, by and through his undersigned attorneys, hereby files this Collective and Class Action Complaint against Defendants, ANGLER ELECTRIC LLC (the "Corporate Defendant") and GREGORY BLAU (the "Individual Defendant," and together with Corporate Defendant, the "Defendants") and alleges as follows:

## INTRODUCTION

1. Plaintiff alleges on behalf of himself and similarly situated workers, who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants:

(1) unpaid overtime wages, (2) unpaid wages due to time-shaving, (3) unpaid wages due to automatic meal break deduction, (4) liquidated damages, and (5) attorneys' fees and costs.

2. Plaintiff further alleges on behalf of himself and similarly situated workers, pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq*., and Article 19, §§ 650 *et seq*., the supporting New York State Department of Labor Regulations, seeking from Defendants: (1) unpaid overtime wages, (2) unpaid wages due to time-shaving, (3) unpaid wages due to automatic meal break deduction, (4) unpaid prevailing wages; (5) liquidated damages, (6) statutory damages, and (7) attorneys' fees and costs.

3. Plaintiff further alleges, pursuant to the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215, that Defendants retaliated against Plaintiff for complaining of Defendants' unlawful wage practices, seeking from Defendants: (1) economic damages, (2) liquidated damages, and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

***Plaintiff***

***ERIC MYCOO***

8. Plaintiff is an adult who resides in Queens County, New York.

9. Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

10. Plaintiff retained Brown Kwon & Lam, LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

***Defendants***

11. At all relevant times, Defendants owned and operated an electrical services company, operating under the tradename Angler Electric.

12. At all relevant times, Defendants provided electrical services, including wiring and panel upgrades and generator installations and repairs, a majority of which were public works jobs.

13. At all relevant times, Angler Electric is owned by Individual Defendant Gregory Blau.

14. At all relevant times, Defendants operated Angler Electric through the Corporate Defendant.

15. At all relevant times, Corporate Defendant had an annual dollar volume of sales in excess of $500,000.

16. At all relevant times, Defendants jointly employed Plaintiff and similarly situated employees.

17. At all relevant times, each Defendant had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

18. At all relevant times, Defendants were and continue to be an employer within the meaning of the FLSA and NYLL.

***ANGLER ELECTRIC LLC***

19. Defendant ANGLER ELECTRIC LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process located at c/o ANGLER ELECTRIC LLC, 15 Brookside Avenue, Suffern, New York 10901.

20. At all relevant times, ANGLER ELECTRIC LLC has done business as Angler Electric LLC.

21. ANGLER ELECTRIC LLC is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

22. At all relevant times, ANGLER ELECTRIC LLC has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

23. At all relevant times, ANGLER ELECTRIC LLC applies the same employment policies, practices and procedures to all non-exempt employees at Angler Electric.

***GREGORY BLAU***

24. At all relevant times, Individual Defendant GREGORY BLAU has been an owner and operator of ANGLER ELECTRIC LLC.

25. At all relevant times, Individual Defendant GREGORY BLAU has been a principal of Corporate Defendant.

26. At all relevant times, GREGORY BLAU has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment at ANGLER ELECTRIC LLC.

27. At all relevant times, GREGORY BLAU has had the power to hire, fire, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiff and similarly situated employees at ANGLER ELECTRIC LLC.

28. At all relevant times, GREGORY BLAU has had the power to maintain employment records, including time and/or wage records of employees at ANGLER ELECTRIC LLC.

29. At all relevant times, GREGORY BLAU has been actively involved in managing the day to day operations of ANGLER ELECTRIC LLC.

30. At all relevant times, GREGORY BLAU has had authority over personnel or payroll decisions and employment policies, practices and procedures at ANGLER ELECTRIC LLC.

31. At all relevant times, GREGORY BLAU has had the power to prevent or stop any unlawful pay practices that harmed Plaintiff and similarly situated employees.

32. GREGORY BLAU is a covered employer within the meaning of the FLSA and the NYLL, and, at all relevant times, has employed Plaintiff and similarly situated employees.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

33. Plaintiff brings the First Cause of Action, the FLSA claims, on behalf of himself and all similarly situated current and former non-exempt employees employed by Defendants, from the date that is three (3) years prior to the filing of this Class and Collective Action Complaint

until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

34. At all relevant times, Plaintiff and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members their (i) proper overtime wages, (ii) proper wages due to time-shaving, and (iii) proper wages due to automatic meal break deduction. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

35. All of the work that Plaintiff and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and FLSA Collective Members have performed.

36. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

37. For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

38. Plaintiff brings the Second and Third Causes of Action, the NYLL claims, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("F.R.C.P."), on behalf of himself and a class of persons consisting of all current and former non-exempt employees employed at Angler Electric, owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the

filing of the Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members").

39. Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

40. Plaintiff is a member of the Class.

41. The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

42. The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

43. Plaintiff's claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

44. Plaintiff and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay proper overtime wages, (ii) failing to pay wages due to time-

shaving, (iii) failing to pay wages due to automatic meal break deductions, (iv) failing to pay prevailing wages, (v) failing to provide proper wage notices, and (vi) failing to provide proper wage statements, in violation of the NYLL.

45. Plaintiff and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

46. Plaintiff and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures under the NYLL.

47. Plaintiff is able and willing to fairly and adequately protect the interests of Class Members and have no interests antagonistic to Class Members.

48. Plaintiff is represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

49. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual

litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

50. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

51. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

52. Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

53. Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiff and individual Class Members and include, but are not limited to, the following:

a. Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

b. Whether Defendants paid Plaintiff and Class Members at the lawful prevailing wage rate;

c. Whether Defendants required Plaintiff and Class Members to work hours in excess of forty (40) per workweek;

d. Whether Defendants paid Plaintiff and Class Members their full and proper overtime wages for hours worked in excess of forty (40) per workweek;

e. Whether Defendants claimed a meal break regardless of whether Plaintiff and Class Members took a meal break;

f. Whether Defendants failed to compensate Plaintiff and Class Members for their full and proper wages due to time-shaving;

g. Whether Defendants failed to furnish Plaintiff and Class Members with proper wage notices, as required by the NYLL; and

h. Whether Defendants failed to furnish Plaintiff and Class Members with proper wage statements with every payment of wages, as required by the NYLL.

## STATEMENT OF FACTS

54. In or around February 2021, Plaintiff was hired by Defendants to work for Angler Electric as an electrician. At all relevant times, Angler Electric provided and continues to provide electrical services for building projects throughout New York City. Plaintiff was employed by Defendants until on or about December 24, 2025.

55. At all relevant times, Plaintiff was scheduled to work and worked at least from 7:00am through 4:00pm, for five (5) days per week, for a total of at least forty-five (45) hours per workweek. At all relevant times, Defendants automatically deducted one hour each workday for a meal break, resulting in Plaintiff being compensated for forty (40) hours per workweek. At all relevant times, FLSA Collective Plaintiffs and Class Members worked similar hours and were similarly compensated with an automatic meal break deduction.

56. At all relevant times, Defendants entered into numerous contracts with the City of New York, as well as other government agencies, and quasi government agencies. All of the work Plaintiff performed for Defendants was on public works projects. Plaintiff, FLSA Collective Plaintiffs and Class Members worked on numerous New York City Housing Authority (“NYCHA”)

projects throughout Brooklyn (Crown Heights area), Staten Island (West Brighton area) and Manhattan (Washington Heights and Harlem areas).

57. Throughout his employment with Defendants, Plaintiff's primary duties were to rewire kitchens and bathrooms, including upgrading electrical panels, pulling circuits for the kitchen and bathroom, and installing smoke detectors for building units at the NYCHA buildings. At all times, Plaintiff was the lead electrician for kitchen work, and when there was no kitchen-related work for Plaintiff, he was then assigned to install smoke detectors. At all times, Plaintiff was predominantly either installing or upgrading electrical work, and his duties did not involve electrical maintenance.

58. New York State Labor Law § 220 provides that the wages to be paid to laborers, workmen and mechanics upon public work shall not be less than the "prevailing rate of wages."

59. The "prevailing rate of wage" is the rate of wage paid in the locality by virtue of collective bargaining agreements between bona fide labor organizations and employers in the private sector. *See* New York Labor Law § 220.

60. New York Labor Law § 220 also requires that the laborers, workmen and mechanics upon such public work be provided "supplemental benefits" at the prevailing rate. "Supplemental benefits" are all forms of renumeration for employment paid in any medium other than cash, including but not limited to health, welfare and non-occupational disability insurance, retirement and vacation benefits, holiday pay and life insurance. The prevailing rate of supplemental benefits is determined in the same manner as wages. *See* New York Labor Law § 220.

61. Upon information and belief, a schedule of prevailing rates of wages and supplements to be paid to all workers for furnishing labor on the sites of public works projects was annexed to and formed a part of each public work contract.

62. At all relevant times, Defendants paid Plaintiff and Class Members less than the prevailing rates of wages and supplements to which Plaintiff and other members of the putative class were entitled under each public work contract.

63. Throughout Plaintiff's employment, Plaintiff provided electrical services, such as upgrading panels and installing smoke detectors, not electrical maintenance. At all times, Defendants had a policy of misclassifying the job duties of Plaintiff and other similarly situated employees to reduce compensating them at the full prevailing wage rate for the work that they were actually performing for Defendants. At all relevant times, even though Plaintiff exclusively performed electrical services throughout his employment with Defendants, Defendants improperly compensated Plaintiff by splitting his hours worked and compensating him in part at the correct electrician rate and in part at an improper maintenance rate. From in or around the start of Plaintiff's employment until on or about November 17, 2024, Defendants compensated Plaintiff approximately $122.09 per hour for electrician work and approximately $50.60 per hour for alleged maintenance work. From in or around November 18, 2024 through on or about December 24, 2025, Defendants compensated Plaintiff approximately $124.75 per hour for electrician work and approximately $50.60 per hour for alleged maintenance work. At all times, Defendants undercompensated Plaintiff by paying part of Plaintiff's hours worked at the maintenance rate when Plaintiff performed electrical services. Based upon Plaintiff's observations and conversations with other similarly situated employees, Defendants similarly misclassified their job

duties in order to pay them at a lower prevailing wage rate than for the work that they actually performed for Defendants.

64. Prior to on or about May 25, 2025, during the limited occurrences that Defendants compensated Plaintiff for overtime, Defendants paid overtime at a rate of approximately $64.85 per overtime hour worked. At all relevant times, Plaintiff did not agree to such an overtime rate. From thereafter, Defendants paid overtime at a rate of approximately $74.14 per overtime hour worked. At all relevant times, Plaintiff did not agree to such an overtime rate. At all relevant times, FLSA Collective Plaintiffs and Class Members were similarly not paid their full and proper overtime at time-and-a-half their regular rate of pay for all overtime hours worked.

***Time-shaving***

65. From in or around the start of his employment until in or around September 2023, although Plaintiff was regularly scheduled to work from 7:00am to 4:00pm, Plaintiff regularly worked beyond his scheduled shift without additional compensation. During this time period, Plaintiff was employed at the Brooklyn location. For the Brooklyn location, Defendants' materials, supplies and equipment were stored in the basement of a nearby building on Howard Avenue. At all times during this time period, Plaintiff and similarly situated employees were instructed to arrive at the Howard storage approximately 30 minutes before their start time to load the van with the materials, supplies and equipment for the workday. The majority of the crew were then made to walk to the Brooklyn building site from the Howard storage location, which took between 5 to 10 minutes depending on the building site for the workday, to then unload the materials, supplies and equipment from the van before they were allowed to clock-in. At the end of the workday, Plaintiff and similarly situated employees were instructed to clock-out at or around 4:00pm and then were made to load the van from the Brooklyn building site with their materials, supplies and

equipment, walk to the Howard storage, and assist them in unloading the materials, supplies and equipment for storage until the next morning. This took approximately twenty to twenty-five minutes every workday, for which they were not compensated for. Due to this policy, Plaintiff, FLSA Collective Plaintiffs and Class Members were not paid between fifty to fifty-five minutes per workday for pre-shift and post-shift off-the-clock work.

66. At all relevant times, the supervisor, Terry Bassel, was aware that Plaintiff, FLSA Collective Plaintiffs and Class Members were required to work off-the-clock to load and unload materials, supplies and equipment every workday.

67. In or around October 2023, Defendants transferred Plaintiff to work in Staten Island. At the Staten Island location, Plaintiff and similarly situated employees were regularly required to work approximately fifteen to thirty minutes beyond the 4:00pm end time without compensation. At all relevant times, Plaintiff and his co-workers started cleaning up at or around 3:45pm, with them finishing between 4:15pm and 4:30pm. Due to this policy, Plaintiff, FLSA Collective Plaintiffs and Class Members were not paid between fifteen to thirty minutes per workday for post-shift off-the-clock work.

68. At all relevant times, while Plaintiff was employed at Staten Island, Plaintiff also regularly worked one extra hour pre-shift without compensation approximately 2-3 times per month. Throughout this period, approximately 2-3 times per month, Plaintiff was asked to accept deliveries of materials. However, Defendants failed to compensate Plaintiff for his work. Due to this policy, Plaintiff was underpaid 2-3 hours per month.

69. At all times, regardless of work location, Defendants automatically deducted an hour per workday for a meal break from Plaintiff and similarly situated employees. At all times, Plaintiff and similarly situated employees were either unable to take any meal breaks or were

unable to take an uninterrupted meal break. At all relevant times, Plaintiff was regularly unable to take any meal breaks 3 out of the 5 workdays, and for the remaining 2 workdays out of the week, he was unable to take an uninterrupted meal break and would have to rush eating, typically taking up to 15 minutes maximum to eat.

70. Defendants' time-shaving policies and failure to pay employees for all compensable hours worked, resulted in a systemic failure to pay the full and proper wages for all hours worked by Plaintiff, FLSA Collective Plaintiffs and the Class. In total, Plaintiff, FLSA Collective Plaintiffs and the Class were regularly not paid approximately 6.25 to 9.75 hours per workweek. Given that Plaintiff, FLSA Collective Plaintiffs and the Class were scheduled to work forty hours per week after the automatic meal break deduction, such hours worked were unpaid overtime.

71. At all relevant times, Defendants paid Plaintiff, FLSA Collective Plaintiffs and Class Members less than the prevailing rates of wages and supplements to which Plaintiff and other members of the putative class were entitled under the Public Works Contracts.

72. At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class Members regularly worked over forty hours per workweek, but Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs and Class Members at time-and-a-half their regular rate of pay for all overtime hours worked. At all relevant times, Plaintiff, FLSA Collective Plaintiffs and Class Members did not agree to a different overtime rate.

73. At no time were Plaintiff, FLSA Collective Plaintiffs and Class Members paid their full and proper wages for all hours worked.

74. Defendants knowingly and willfully operated their business with a policy of failing to pay the full and proper wages to Plaintiff, FLSA Collective Plaintiffs and Class Members for all hours worked, in violation of the FLSA and NYLL.

75. Throughout his employment with Defendants, Plaintiff did not receive any notices of pay rate or pay day from Defendants, as required under the NYLL.

76. Throughout his employment with Defendants, Plaintiff did not receive proper wage statements from Defendants, as required under the NYLL.

77. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiff and Class Members pursuant to the requirements of the NYLL. Defendants' lack of proper notice of pay rate allowed Defendants to misclassify Plaintiff's actual duties and to undercompensate Plaintiff and the Class. Plaintiff and the Class were harmed by Defendants' lack of proper notice of pay rates as it deprived them of knowledge of their proper rates and overtime rates. Due to Defendants' lack of proper notice, Plaintiff and the Class did not receive their full and proper pay for all hours worked, including overtime pay for their overtime hours worked.

78. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members pursuant to the requirements of the NYLL. Specifically, the wage statements failed to set forth Plaintiff's full and proper wages. For example, at all times, the wage statements failed to accurately reflect Plaintiff's and Class Members' actual hours worked. Plaintiff and Class Members were harmed as a result due to the improper reporting and subsequent under compensation to Plaintiff and the Class.

79. Based on Plaintiff's observations and conversations with his co-workers, Plaintiff, FLSA Collective Members and Class Members were subject to the same unlawful wage and hour policies.

Retaliation

80. In or around Summer of 2023, Plaintiff complained to the then-new project manager, Eugene, regarding off-the-clock work. Plaintiff, Eugene, Terry and the rest of the Brooklyn workers were on Tapscott Avenue, and Eugene asked everyone to clock-out, to pack up and load the van, and to meet him at the Howard storage facility. Plaintiff retorted "why are we punching out if we are still going to be working, that's illegal." Following Plaintiff's comment, there was an awkward silence among everyone. Terry did not comment but gave a disapproving look towards Plaintiff as if to stop him from continuing to make such comments. Eugene also did not respond to Plaintiff's comment, but Eugene's face became hostile and disapproving.

81. Thereafter, Eugene treated Plaintiff dismissively and in a hostile manner whenever they were working together.

82. Shortly thereafter, in or around October 2023, the foreman from Staten Island contacted Plaintiff to inform Plaintiff that he was to start at Staten Island the following day.

83. Upon information and belief, Plaintiff was unilaterally transferred away by Eugene and Terry from Brooklyn in retaliation for his workplace complaints. At all times, Plaintiff never requested a workplace transfer.

84. At all relevant times, Defendants transferred Plaintiff to Staten Island as it was an undesirable location and expected to wind down.

85. In or around the end of 2025, when the Staten Island project was nearly completed, Defendants kept a minimal crew in Staten Island to finalize the project and transferred the remainder of Plaintiff's co-workers to work in Brooklyn.

86. Upon information and belief, Plaintiff and one other co-worker, were the only two employees neither kept to finalize the project in Staten Island nor reassigned to work in Brooklyn, which was managed and supervised by Eugene and Terry. Plaintiff and his co-worker were the only two employees either terminated or constructively terminated following the end of the Staten Island project. Upon information and belief, Plaintiff's co-worker had also complained of unpaid wages and wage issues. Upon information and belief, Plaintiff's co-worker was not directly terminated. Instead, he was kept on a call list for future jobs, but they never called him or reassigned him. Upon information and belief, Defendants kept Plaintiff's co-worker on a call list because some of the public works projects required special licensing that the co-worker had. However, upon information and belief, the co-worker was never offered any other assignments from Defendants.

87. Upon information and belief, Plaintiff was not reassigned back to Brooklyn due to his prior workplace complaints.

88. Upon information and belief, Plaintiff and his co-worker were terminated or constructively terminated in retaliation for their prior complaints of workplace wage issues.

89. As a direct result of Defendants' unlawful actions, Plaintiff suffered and continues to suffer from economic loss, severe stress, anxiety and emotional distress.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
### Violation of the Fair Labor Standards Act on Behalf of Plaintiff and FLSA Collective Members

90. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

91. The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiff and FLSA Collective Members.

92. Defendants failed to pay Plaintiff and FLSA Collective Members overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

93. At all times relevant, Defendants failed to pay Plaintiff and FLSA Collective Members their full and proper wages for all hours worked.

94. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Members of their rights under the FLSA.

95. Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members wages for all hours worked, including at the proper overtime, when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and FLSA Collective Members.

96. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

97. As a result of Defendants' willful violations of the FLSA, Plaintiff and FLSA Collective Members have suffered damages by being denied their full and proper wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

98. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Members and the actual compensation paid to Plaintiff and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

**SECOND CAUSE OF ACTION**
**Violation of the New York Labor Law on Behalf of Plaintiff and the Class**

99. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

100. At all times relevant, Plaintiff and the Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

101. At all times relevant, Defendants failed to pay Plaintiff and the Class for all wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations, including for overtime wages.

102. At all times relevant, Defendants failed to pay Plaintiff and the Class their full and proper wages for all hours worked.

103. Defendants failed to furnish Plaintiff and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee

as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

104. Defendants failed to furnish Plaintiff and the Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

105. Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the Class as required by the NYLL and the supporting New York State Department of Labor Regulations.

106. Defendants failed to properly disclose or apprise Plaintiff and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

107. As a result of Defendants' willful violations of the NYLL, Plaintiff and the Class are entitled to recover from Defendants their unpaid overtime, unpaid wages, liquidated damages, statutory damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

**THIRD CAUSE OF ACTION**
**Breach of Contract of the Public Works Contracts and Subcontracts on behalf of Plaintiff and the Class**

108. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

109. Upon information and belief, the Public Works Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid Plaintiffs and putative Class Members.

110. Those prevailing rates of wages and supplemental benefits were made a part of the Public Works Contracts and/or Public Works Subcontracts for the benefit of the Plaintiff and Class Members.

111. Defendants willfully breached the Public Works Contracts and/or Public Works Subcontracts by failing to pay Plaintiff and the other members of the putative class the prevailing rates of wages and supplemental benefits for all labor performed upon the sites of the Public Works Projects.

112. Further, Labor Law § 220 and the Public Works Contracts or Public Works Subcontracts specifically require that language mandating the payment of prevailing wages be included in sub-contracts.

113. To the extent that Defendants' Public Works Contracts or Subcontracts erroneously and illegally failed to provide language mandating the payment of prevailing wages to their employees, reformation of these Public Works Contracts or Subcontracts to include such language is equitable and proper.

114. As a result of Defendants' willful breach of the Public Works Contracts and Subcontracts, Plaintiff and the Class are entitled to recover from Defendants their unpaid

prevailing wages and supplements, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

**FOURTH CAUSE OF ACTION**
**Retaliation in Violation of the Fair Labor Standards Act on Behalf of Plaintiff**

115. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

116. Plaintiff is an employee and a protected person within the meaning of the FLSA and Defendants are covered employers under the FLSA.

117. The FLSA prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the FLSA. 29 U.S.C. § 215(a)(3).

118. Defendants unlawfully retaliated against Plaintiff on the basis of his protected activities under the FLSA by reassigning Plaintiff to an undesirable work location following his complaints and then ultimately terminating his employment.

119. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

120. Due to Defendants' violation of FLSA, namely, retaliation against Plaintiff for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) emotional distress damages, (3) liquidated damages; and (4) attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Retaliation in Violation of the New York Labor Law on Behalf of Plaintiff**

121. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

122. Plaintiff is an employee and a protected person within the meaning of the NYLL and Defendants are covered employers under the NYLL.

123. The NYLL § 215 prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the NYLL.

124. Defendants unlawfully retaliated against Plaintiff on the basis of his protected activities under the NYLL by reassigning Plaintiff to an undesirable work location following his complaints and then ultimately terminating his employment.

125. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

126. Due to Defendants' violation of NYLL, namely, retaliation against Plaintiff for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages; (2) emotional distress damages, (3) liquidated damages; and (4) attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Members and the Class, respectfully requests that this Court grant the following relief:

a. Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b. Certification of this case as a class action pursuant to Rule 23 of the F.R.C.P.;

c. Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

d. An award of unpaid overtime due under the FLSA and NYLL;

e. An award of unpaid wages resulting from Defendants' failure to pay wages for all hours worked, in violation of the FLSA and NYLL;

f. An award of unpaid prevailing wages due under the Public Works Contracts;

g. An award of liquidated damages as a result of Defendant's willful failure to pay full and proper wages for all hours worked, pursuant to the FLSA and NYLL;

h. Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage notices, as required by the NYLL;

i. Statutory penalties for Defendants' failure to provide Plaintiff and Class Members with proper wage statements, as required by the NYLL;

j. An order awarding relief for Defendants' retaliation, including but not limited to lost compensation, liquidated damages, and emotional distress damages, under the FLSA and NYLL;

k. Pre-judgment and post-judgment interest;

l. Reasonable attorneys' fees and costs of this action;

m. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

n. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

o. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: October 22, 2026

Respectfully submitted,

**BROWN KWON & LAM, LLP**

By: */s/ Clara Lam*

Clara Lam, Esq. (CL6399)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
clam@bkllawyers.com
*Attorneys for Plaintiff*